See, also, 1 F.R.D. 242, 36 F.Supp. 470.

Saperston, McNaughtan, Saperston, of Buffalo, N. Y. (Alfred M. Saperston, Clayton M. Smith, and R. Kerford Wilson, all of Buffalo, N. Y., of counsel), for plaintiff.

O'Brian, Hellings, Ulsh & Morey, of Buffalo, N. Y. (Vernon M. Dorsey and William I. Morey, both of Buffalo, N. Y., of counsel), for defendant Hartford-Empire Co.

Kenefick, Cooke, Mitchell, Bass & Letchworth, of Buffalo, N. Y., for defendant Hazel-Atlas Glass Co.

KNIGHT, District Judge.

This is a motion (1) for an order pursuant to Rule 34 of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c, requiring the plaintiff to produce and permit defendant Hartford-Empire to inspect certain documents; (2) for leave pursuant to Rule 26 to take the testimony of certain persons regarding specified matters; and (3) for an order requiring certain individuals to answer certain questions upon a pending examination.

## BROCKWAY GLASS CO., Inc., v. HART-FORD-EMPIRE CO. et al.

### No. 387.

District Court, W. D. New York.

Feb. 17, 1942.

The parties hereto are, and at all of the times hereinafter mentioned were engaged in the manufacture of glass containers.

The defendant, Hartford-Empire Company (hereinafter designated Hartford) heretofore brought suit against Kearns-Gorsuch (hereinafter designated Kearns) a subsidiary of the defendant Hazel-Atlas (hereinafter named Hazel) for the infringement of certain patents. Hartford also then threatened suit against the plaintiff for the infringement of patents closely related to those in the Kearns-suit. On or about March 28, 1928, plaintiff (hereinafter designated Brockway) and Hazel and Kearns made an agreement which provided, in substance, that in consideration of Brockway's aid to Hazel-Kearns in the defense of the aforesaid infringement suit neither Hazel nor Kearns would allow Hartford to avoid a final decision or a compromise of said infringement suit, unless Brockway received from Hartford "the same or as favorable terms" as Hazel or Kearns or both made with Hartford, the basis of any settlement being the number of furnaces that might be operated by Brockway within a certain limit.

The infringement suit aforesaid was tried and decision rendered, appeal taken and decision made by the Circuit Court. Following this, Hazel-Atlas made a settlement agreement with Hartford on its own behalf and that of its subsidiary Kearns. Later Brockway also made a settlement with Hartford. Plaintiff here claims fraud on the part of the defendants herein in procuring it to enter into an agreement the terms of which were not the same or were less favorable than that made by Hartford with Hazel and Kearns.

I. This motion seeks the production and inspection of certain cost production records of the plaintiff and its predecessor. The questions presented relate to the measure of damages.

The agreements between Hartford and Brockway, and Hartford and Hazel involve various considerations. Under the terms of the Brockway-Hartford agreement Brockway paid Hartford $10,000 and assigned certain feeder patents to Hartford. It gave no release to Hartford or Hartford's licensees; no license under future inventions, and no right to its own experience or information. Hartford in return licensed Brockway to use ten feeders under the Hartford patents, gave Brockway release for damages for past infringement and partial indemnity for infringement of other patents. It gave Brockway no share in its net income; no favored nation clause, a limited field of wares, and a release of damages for past infringement. Hazel paid Hartford $1,000,-000, released Hartford and its licensees for past infringements, gave a license under Hazel's existing feeder and former patents and those procured prior to 1945 and the right to Hartford to Hazel's experience and information. In return Hartford agreed to give Hazel one-third of the annual net income of Hartford from licensed inventions exceeding $850,000; a license under all Hartford feeder and former patents, but no indemnity for infringement of other patents; a release of damages for past infringement; a favored nation clause; broad fields of ware. The agreements between the parties are lengthy and are made in great detail. Sufficient thereof has been pointed out for the purpose of this motion.

The motion under Rules 34 and 26 seeks the production, inspection and copying or photographing of the cost production records of the plaintiff and its predecessor from 1930 to 1940 and their quantity production records from 1926 to 1933, and the examination of certain witnesses with respect thereto.

Defendant Hartford claims that in determining whether the agreement made between Brockway and it was as favorable as that made between Hazel and it, the consideration which flowed between the parties to each agreement must be valued; that the value of what Brockway received and paid and what Hazel received and paid must be found. It says that this makes it necessary to value Hazel's right to part of Hartford's net income, and the value of Hazel's release and license and its information and experience which the agreement states are consideration for the share in Hartford's net income. Further, that whether Brockway's agreement was as favorable in respect to the income share is dependent on whether Brockway's patents were of such value that in return Brockway should have received a share in Hartford's net income besides the credit allowed Brockway in mitigation of the damages for past infringement.

Defendant Hartford also says that in showing whether the terms given Brockway were as favorable as those given Hazel it is necessary to value the release

which was one of the considerations received by Brockway, such release to cover infringements back to 1926.

Defendant claims that the issue as to whether Brockway was damaged by making its agreement with Hartford is to be determined by the aforesaid comparison of the two Hartford agreements, but that the question of the right to receive any damages depends on whether the benefits received by Brockway exceeded the consideration paid. Further, that the damages, if any, sustained by Brockway by reason of its release of Hazel and Kearns, are limited to the expenses it incurred in patent litigation with Hartford subsequent to Hazel's breach; or expenses Brockway would have incurred had Brockway been sued and carried the case through to ultimate conclusion, or the damage resulting from Brockway's liability to Hartford for infringement of claim held valid in the Kearns case; that the maximum damages Brockway can recover for any fraud is the difference between the value of that with which Brockway failed and the actual value of what it received.

On the other hand, the plaintiff says "favorable terms," as used in the Brockway-Hazel-Kearns agreement, means a comparison of what Brockway received with what Hazel received; that it is immaterial what Brockway gave and what Hazel gave in return; that it was to receive the same terms as Hazel and Kearns on the basis of no more furnaces than it may operate upon 7½ acres. The plaintiff makes no complaint in respect to damages, except as to the right to share in part of Hazel's share in Hartford's income. It asserts the determination of the right is simply and easily made. It claims that under the agreement of 1928 there never was any intention that Brockway's benefits should be in any wise dependent on or measured by what it or Hazel gave Hartford; that the loss or damage to Brockway is easily assessed by the application of the royalties paid and income received by Hazel to the royalties paid by Brockway. It asserts that its loss or damage is accurately determined by the solution of the simple equation, to wit, that Hazel's royalties paid are to Brockway royalties paid as Hazel's income from Hartford is to that which Brockway should have received.

The questions presented here are most unusual and certainly complicated.

The court should not attempt on these motions to fix the rule for measuring the damages, except on the clearest case. It is quite apparent that following defendant Hartford's theory it will be relevant to go into various of the matters concerning which it seeks to make inquiry. It seems to me that certain of its requests are too broad, but that certain ones should be granted. This is not upon the theory that such as are allowed are necessarily relevant, but rather that they may be relevant on the trial. The court will not now pass on the question of the measure of damages. It will leave it for the trial when it will have the benefit of the testimony derived through these motions, and, of course, all other testimony on determining the measure of damage.

I. Item 1. The plaintiff is required to produce and permit the inspection of the cost production records, and that of its predecessor, for the period covering the years 1930 to 1940, inclusive.

Item 2. The motion in respect to this is denied.

II. Item 1. The motion is granted in so far as it relates to the examination of Mr. Hess as to the books ordered to be produced under I-Item 1 above; and as to Mr. Hess and Mr. Warren as the "Income and Expense" records and balance sheets.

Item 2. As to questions to be propounded to Messrs. Spindler, Harding, and Warren, the motion is premature and is denied. It is possible that the examination and inspection herein authorized may obviate the necessity of asking some of the proposed questions. Clearly the witnesses should not be required to answer some of these proposed questions.

III. The motion in so far as it relates to questions already put to Mr. Harding is denied. It seems that he has sufficiently answered questions directed to the purpose sought.

IV. Miscellaneous questions.

A. The motion to require Mr. McCallister to answer questions directed to show what it would have cost plaintiff if sued on the patents in suit in the Kearns case is denied.

B. (a) Since Mr. Saperston concededly drew the complaint, the questions asked of him as to who furnished the information on which Par. XI was drawn should be answered. Any privilege is

270

waived. Further, Mr. Saperston was an officer of the plaintiff corporation. (2) and (3) are denied. If (1) is answered, that answers (2) and (3).

B. (b) The witness Warren should answer the question. This is consistent with the ruling in B (1) above.

C. As to questions put to Mr. Harding, some of these are proper as bearing on the knowledge of the falsity of testimony given in the suit against Kearns.

1. Should be answered.
2. Should be answered.
3. Should not be answered.
4. Should not be answered.
5. Should be answered.
6. Should not be answered.

■ It is realized that in the action herein taken the court is opening the door for a wide field of examination. This must not be used for purposes of delay. The examination permitted should be promptly made. The plaintiff has evidenced its willingness for a prompt trial, and this can be had at the approaching March term of this court. Every effort should now be made to that end.

The court is of the opinion that an examination of plaintiff's books will entitle the latter to examine the books of Atlas, if desired. This is consistent with the position taken by the defendant Hartford on these motions.

Finally, it is to be understood that the court on these motions is not passing on the question of the measure of damages.

An order may be entered accordingly.